## O. M. GIBBS v. GEO. W. SLEEPER.

### Account.   Practice.

A bailiff is liable for the "profits which he hath raised or made, or might by his industry or care have reasonably raised or made," out of the property of which he was bailiff.

But he is not liable to account in the action of account for the property he received, but which he has not turned into profits, unless he has so disposed of it, or appropriated it to his own use, that he has consumed or wasted it as if it were his own; and that he has converted it to his own use so as to be liable for it in the action of trover, may not be a sufficient appropriation of it to make him liable in account.

When objection is made to the admission of testimony before an auditor, but no special exception to the ruling is filed in the county court, no question can be raised thereon, revisable in the supreme court.

ACCOUNT.   The auditor reported substantially the following facts:

On the first day of April, 1870, the plaintiff was the owner of a patent-right known as " Swazey's Butter-Working Churn," with the right to manufacture and sell the same, together with the territory included in the states of New York, Pennsylvania, and Ohio.   On that day, both parties then residing in Cabot, Vermont, the plaintiff employed the defendant to work for him in the business of selling said patent-right and patent churn in the states aforesaid.   The contract was reduced to writing, and duly executed by the parties on the same day, and a written power of attorney was then executed by the plaintiff to the defendant.   At the time these writings were executed, it was agreed and understood that either party, upon becoming dissatisfied with the other, or with the manner in which the business was being conducted, or if it

53

should turn out to be unprofitable, had the right at any time to put an end to the contract. In pursuance of said contract and power of attorney, the defendant commenced his service on the 4th of said April, and on that day the parties shipped from Montpelier, Vt., to Ogdensburgh, N. Y., one hundred and twenty churns, and to Mooers Junction, N. Y., forty-eight churns, and the next day the plaintiff went to Ogdensburgh, and the defendant to Mooer's Junction. From the time of their arrival in the state of New York, to the 26th of said April, the parties frequently met, and they exerted themselves to their utmost to sell both territory and churns, but with very poor success. During this time, they disposed of only three or four churns and the territory of Essex, Clinton, Franklin, St. Lawrence, and Washington counties, in New York, but it did not appear at what price they sold the territory, or how much the plaintiff realized out of said sale; but it did appear that their efforts to sell both churns and territory during this time, were far from being satisfactory to either, and that the plaintiff became discouraged with the result of their efforts, and so informed the defendant, and also informed him that he could not afford to keep him longer at the rate he was paying him. The defendant, although unsatisfied with the result of their efforts, did not want to give up the business, but desired the plaintiff to permit him to make another trial, and to that end, suggested that the plaintiff permit him to go into Tioga county, N. Y., and Bradford and Susquehannah counties, Penn., and there sell churns and territory for the plaintiff. The parties at this time were at Antwerp, N. Y., at which place they had forty-two churns in store, and one other which they had with them, and used for a sample, or model, for exhibition. At this time they made a settlement, and the plaintiff paid the defendant the sum of seventy-six dollars, which was in full payment of all matters and dealings between them up to that date, and was so understood by the parties. Within a day or two after this settlement, the plaintiff left Antwerp, and returned home, and pursuant to some arrangement previously made between them, the defendant left Antwerp about the same time for Tioga county, N. Y., and Bradford and Susquehannah counties, Penn., for the purpose of disposing of churns and territory—the churns then at Antwerp having been shipped by the plaintiff to the defendant at Owego, Tioga county, the defendant taking the sample churn along with him. At the time of said settlement, the plaintiff was released from all further liability to defendant on account of said written contract, and they mutually put an end to the same, and the trip to Tioga county, and into the state of Pennsylvania, was made by defendant under

a verbal arrangement entered into by the parties at that time, at the solicitation of the defendant, which was to the effect that the defendant should proceed to the places above named, and sell territory to the best advantage, under his said power of attorney, each party to receive one half of all the proceeds of such sales, and bear one half of defendant's expenses while so employed. The defendant was to receive the churns then at Antwerp, to be shipped to such points as he should direct, the plaintiff to pay the freight on the same, which the defendant was to sell for the plaintiff according to his best discretion, accounting to the plaintiff on settlement for what they sold for, but if, in selling territory, the defendant found it necessary to throw in a churn, he was at liberty to do so, and was to account to the plaintiff on settlement for one half of the value thereof at ten dollars, the retail price. The plaintiff then advanced to the defendant the sum of thirty dollars towards paying his half of the defendant's prospective expenses, for which the plaintiff was to have credit on a future settlement. The plaintiff delivered to defendant the forty-three churns then at Antwerp, and the same were subsequently shipped to Owego to the defendant's order. The plaintiff thereupon left for Vermont, and the defendant left for Tioga and the adjoining counties in Pennsylvania, and remained in that vicinity until some time in the fore part of July, 1870, when he returned to Cabot, and in a few days informed the plaintiff that he had made no sales of territory, and had sold but two churns, for which he received ten dollars each, and had put the remainder into some man's hands to sell, with a power of attorney to sell territory, that the man's name was S. W. Breed, or W. S. Breed, but he refused to inform the plaintiff where said Breed resided. A portion of the churns, he subsequently informed the plaintiff, were stored at Owego, but he refused to inform the plaintiff the name of the man in whose charge he left them, giving as a reason for thus refusing, and for not telling where the man Breed resided, that he was afraid the plaintiff would take possession of the churns, and revoke Breed's power of attorney, which, he said, he could not permit, as he had money and time invested as capital in the business, and he should hold on to the property until he could realize enough out of sales to get his pay. Some little time after this interview, the plaintiff called on the defendant, and requested a statement of his account of expenses and property sold, &c., during the time he was in Tioga county and Pennsylvania; which the defendant produced, and it was ascertained that the plaintiff was owing the defendant a balance of $37.49 on account of defendant's expenses, after deducting freights which plaintiff was to

pay, and the two churns at ten dollars each, which defendant had sold, and the thirty dollars which plaintiff advanced defendant as aforesaid. The plaintiff did not approve of the acts of the defendant, and expressed himself dissatisfied with the course the defendant had taken in placing this territory and the churns in the hands of Breed to sell. The plaintiff made frequent inquiries of defendant as to how Breed was getting along, and whether he had succeeded in disposing of any churns or territory. The answer of the defendant always was, that he had done nothing yet, that it was a bad time to sell. Thus matters ran along until some time in the fall of that year, when the plaintiff again demanded that defendant should inform him where Breed resided, and where his churns were, so that he could send and get possession of them, and revoke the power of attorney held by Breed. The plaintiff was always ready and willing to pay the defendant the balance ascertained to be due him, when the defendant would give him information so he could regain possession of his churns and territory, and so informed the defendant. This proposition the defendant always refused to accede to, unless the plaintiff would pay him all his expenses, and at the rate of one hundred dollars per month for his time. The defendant never gave the plaintiff this information, but always refused so to do, and the plaintiff could never ascertain the whereabouts of Breed, or who had the churns in charge; and frequently demanded of defendant the churns, or an order for them, but the defendant always refused both. Some time before this suit was commenced, the plaintiff delivered to the defendant a paper-writing, revoking the defendant's power of attorney. The defendant, while in Tioga county and in Pennsylvania, in addition to the two churns which he sold and received the money for, delivered five churns to one Sleeper, his brother-in-law, with authority to sell the same, and he sold some, and received some money for the same, but how much, and how many he sold, did not appear. The defendant exhibited and delivered one churn to a Mr. Crane, president of an agricultural society, at said Crane's request, but never received any thing therefor. He employed a man by the name of Stephens to assist him in exhibiting and selling said churns, and delivered him one in payment for his services. He also delivered one to a man named Smith, to pay for storage of churns at Owego.

He also delivered seven to said Breed, with instructions to sell the same for him, but whether he ever sold or disposed of any of them, there was no evidence to show. The remaining twenty-six churns were left by the defendant, subject to his order, with one J. M. Smith, at Owego, N. Y.

The auditor, in stating the account between the parties, charged the defendant with the twenty dollars received for the two churns sold, and ten dollars each for the five churns left with Sleeper as aforesaid, and five dollars for one half the value of the churn delivered to Stevens for services, and the same amount for one half the value of the churn delivered to Smith for storage, and ten dollars for the churn delivered to said Crane as aforesaid, and also with the thirty dollars paid to the defendant for expenses as aforesaid ; but did not charge him with the seven churns left with said Breed, or the twenty-six left with the said Smith at Owego, or with any part thereof, but referred his liability therefor to the court as matter of law. The defendant made some objections before the auditor to the admission of testimony, which were overruled ; but, under the ruling of the court, it becomes unnecessary to state the particular point of the objections.

The court, at the September term, 1872, BARRETT, J., presiding, rendered judgment, *pro forma*, on the report for the defendant. Exceptions by the plaintiff.

*C. N. Davenport*, for the plaintiff.

1. There can be no question but the judgment of the county court should be reversed. The only possible doubt is, which of the sums found by the auditor the plaintiff is entitled to recover. Upon the facts found, the plaintiff should recover for the seven churns left with Breed, and the twenty-six left with Smith at Owego. The defendant's relation to the plaintiff was that of agent ; he had authority to sell the churns, and, under the contract, it was his duty to account to the plaintiff for the proceeds of such as he sold, and to return to the plaintiff those unsold. He had no authority to create sub-agents. He refused to give the plaintiff any information as to where the churns were, or to return them to him, or give him an order therefor. He claimed the right to keep them until paid an unfounded claim for his services. He so conducted with the property that he is liable to account for its value.

2. Account is an action to compel a defendant to account for the property or money of which he has had the charge and ad-

ministration for the benefit of the plaintiff. It is founded either upon privity of estate, or privity of contract. Hence, the action will not lie to recover damages for a tort. 1 Swift Dig. 579, 581 ; *Brinsmaid, Adm'r,* v. *Mayo,* 9 Vt. 31. But if a person obtains possession of the goods of another through *privity of contract,* to sell and account for the proceeds thereof, if he convert them to his own use, he is liable for their value in an action of account. *Smith* v. *Woods,* 3 Vt. 485 ; *Allen* v. *Thrall,* 10 Vt. 255 ; *Kellogg* v. *Griswold,* 12 Vt. 291 ; *Scott* v. *Lance,* 21 Vt. 507 ; *LaPoint* v. *Scott,* 36 Vt. 603. There is a class of cases in this state, the principal of which fully sustain the plaintiff's right to a judgment. *Scott* v. *Lance,* 21 Vt. 508, note ; *Flower Brook Mauf'g Co.* v. *Buck,* 18 Vt. 238 ; *Hickok et al.* v. *Stevens,* Ib. 111 ; *Stone* v. *Pulsipher et al.* 16 Vt. 428 ; *Catlin* v. *Smith,* 24 Vt. 85 ; *Waterman* v. *Stimpson,* Ib. 508 ; *Woodward* v. *Harlow,* 28 Vt. 338 ; *Safford* v. *Kingsley,* 40 Vt. 506 ; *Thompson* v. *Babcock,* Brayt. 24. At common law a bailiff is chargeable as well for what he might have received with reasonable care and diligence, as for what he has received. *Adm'r of Cilley's Estate* v. *Tenney,* 31 Vt. 401 ; *Hayden* v. *Merrill,* 44 Vt. 336.

*J. W. Croker* and *Field & Tyler,* for the defendant.

1. The plaintiff claims to recover the largest sum stated in the report. This we insist he is not entitled to recover. As to his receipts for churns sold, and as to expenses, we concede that the defendant is bound to account to the plaintiff ; but we insist that he is not bound to account for the thirty-three churns unsold. 2 B. & P. 438. The right of action of account against bailiffs and receivers, does not exist by our statute, but at common law only. At common law the action lies only in three cases, to wit, against guardians, bailiffs, and receivers ; and it lies only to compel an account of *profits or moneys received* by the defendant. Co. Lit. 172 ; 2 Greenl. Ev. §§35, 36 ; Anthon's Prec. 8, n. (d) ; 1 Swift Dig. 579. If the defendant is liable for the unsold churns in any form of action, which we deny, it is upon the ground of their conversion to his use. Account will not lie in case of a tort. 1 Swift Dig. 581.; *Winchell* v. *Noyes,* 23 Vt. 303.

2. The defendant should not be charged with the churn left with Mr. Crane, nor with those left with Sleeper, because it does not appear that they had been sold.

The opinion of the court was delivered by

WHEELER, J. No question is made but that the defendant was bailiff to the plaintiff, liable to account to the plaintiff. As bailiff, the defendant was liable for the " profits which he hath raised or made, or might by his industry or care have reasonably raised or made," out of the property of which he was bailiff. Co. Litt. Lib. 3, § 259, note, p. 172. A bailiff is not liable to account in the action of account for the property he received, but which he has not turned into profits, unless he has so disposed of it, or appropriated it to his own use, that he has consumed or wasted it as if it were his own ; and that he has converted it to his own use so as to be liable for it in the action of trover, may not be a sufficient appropriation of it to make him liable in account.

The sum of $20, received by defendant for churns sold, was profit, about which his accountability is not questioned.

The five churns left by defendant with his brother-in-law for sale, were left there upon the defendant's own motion, upon an arrangement between him and his brother-in-law, and a part of them appear to have been sold pursuant to that arrangement, but how many were sold, was not shown to the auditor. The defendant, having disposed of these in this manner, should show how many were not sold, if there were any such. Not having done this, he should stand charged as if they were all found to be sold.

The churn delivered Stevens for services, and the one delivered Smith to pay for storage, were appropriated for the common benefit of the parties, and the defendant should stand charged for one half of them. The one delivered Crane was appropriated for the defendant's own advantage, and lost to the plaintiff, and the defendant should be charged with that. These items, together with $30 advanced by the plaintiff to the defendant, were reckoned by the auditor against the defendant.

As to the seven churns left by defendant with Breed, and the twenty-six left with Smith, it does not appear that the defendant

has made any profit from them, nor that he might by diligence or industry have made any, nor that he has either consumed, wasted, or disposed of them as his own, and he is not liable to be charged for them in this accounting. This appears to be according to the statement of the accounts made by the auditor.

No special exception to the ruling of the auditor in admitting testimony, was filed in the county court, therefore, no question was raised upon that ruling that is revisable here.

Judgment reversed, and judgment for the plaintiff on the report according to the report.